FILED
U.S. DISTRICT COURT
AUGUSTA DIV.

2005 MAY 27 PM 2: 28

CLERK _____
SO. DIST. OF GA.

IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

AUGUSTA DIVISION

UNITED STATES OF AMERICA      )
                              )
v.                            )      CR 104-060
                              )
RUSSELL J. ELLICOTT, D.P.M.   )

## ORDER

Before the Court are the various pre-trial and discovery motions filed by Defendant

Russell Ellicott. The United States of America, by and through its attorney, Lisa Godbey

Wood, United States Attorney, and James D. Durham, Assistant United States Attorney, has

filed a combined response to these motions.

### GENERAL DISCOVERY MOTION

As to Defendant Ellicott's general discovery requests, (doc. no. 13 ), the government

responded that it has provided to the Defendant full disclosure of the evidentiary contents of

the government case file, including Federal Bureau of Investigation 302's, Georgia Bureau

of Investigation reports and other summaries of investigative activities. Accordingly, the

Court finds that the position of the United States Attorney in permitting full disclosure of the

government's file pertaining to this case renders Defendant's discovery requests MOOT.

However, to insure that Defendant's requests are in fact covered by the government's

disclosures, the Court hereby requires counsel for Defendant to submit not later than seven

(7) days from the date of this Order a written statement describing any existing disputes or

unresolved items that have not been specifically addressed elsewhere in this Order. The statement should detail the specific items sought and should include a memorandum of law.

Defense counsel is reminded that dissemination of discovery material beyond that necessary to the preparation of the defense is prohibited by Loc. Crim. R. 16.1.

Any discovery material turned over to Defendant shall be maintained by Defendant and not further disseminated. Failure to comply with the terms of this Order may result in contempt proceedings.

In this same motion, Defendant seeks the disclosure of exculpatory and impeaching information in accordance with the principles of Brady v. Maryland, 373 U.S. 83, 83 S. Ct. 1194 (1963) and Giglio v. United States, 405 U.S. 150, 92 S. Ct. 763 (1972). To some extent, Defendant's request exceeds the scope of Brady. Brady material includes information that is favorable to Defendant and material to the issues of guilt or punishment. See Brady, 373 U.S. at 87; United States v. Agurs, 427 U.S. 97, 96 S. Ct. 2392 (1976). This motion is GRANTED to the extent that the government must provide all Brady material to Defendant within five (5) days of the date they receive it or become aware of its existence. With regard to impeaching information, the government must disclose this information seven (7) days prior to trial.

Defendant Ellicott also seeks the disclosure of all electronic surveillance. The government stated that it is unaware of any electronic surveillance conducted in this case. Therefore, the motion for disclosure of electronic surveillance is MOOT.

Defendant requests that the government be ordered to furnish a complete list of witnesses. In non-capital cases such as this case, a defendant is generally not entitled to a

2

list of government witnesses. United States v. Massell, 823 F.2d 1503, 1509 (11th Cir. 1987); United States v. Colson, 662 F.2d 1389, 1391 (11th Cir. 1981). However, as a practical matter, it would appear that Defendant will be receiving much of this information because of the government's liberal discovery policy and because of the government's obligation to disclose Jencks or Brady material. This, in essence, moots Defendant's request. While this Court retains the right to exercise its discretion in permitting Defendant to have access to a list of government witnesses, at most the government would be required to comply with this request not more than ten (10) days prior to trial. Therefore, this motion is DENIED.

In his discovery motion, Defendant Ellicott requests the preservation of the evidence and government agents' rough notes. Defendant does not demand disclosure or production of this evidence, merely preservation. While this material is not generally discoverable, it may later during trial have probative value for purposes of impeachment. The small inconvenience to the government is outweighed by Defendant's interest in a fair trial and the possibility that among the evidence there could be an item later needed for use at trial. The motion is GRANTED. The government is required to preserve all evidence in this case.

## MOTION TO ALLOW PARTICIPATION IN VOIR DIRE

This motion is GRANTED, subject to the following terms and conditions:

(a) Counsel must submit to the Court, not later than ten (10) days prior to trial, a list of questions which they desire to ask prospective jurors;

3

(b) Counsel shall take notes and avoid asking duplicative questions, unless additional clarification from a prospective juror is needed; and

(c) Counsel must address the array in the same order which the Court will later formulate for use at trial during the cross-examination of the government's witnesses. (Doc. no. 12).

## MOTION FOR INFORMATION REGARDING PRIOR BAD ACTS OF DEFENDANT

Defendant Ellicott filed a motion seeking the government to give notice of its intention to use at trial evidence of "other crimes, wrongs or acts" under Fed. R. Evid. 404(b). (Doc. no. 14). The Local Rules provide:

> The United States Attorney shall serve upon counsel for the defendant a written notice of any direct or circumstantial evidence of other crimes, wrongs, or acts of the defendant, or specific instances of conduct or criminal convictions of the defendant, which the Government intends to offer into evidence through either Fed. R. Evid. 404(b) or under the theory that the evidence is so inextricably intertwined with defendant's charged offense that it should be admissible.

Loc. Crim. R. 16.2; see also Loc. Crim. R. 12.3. Nothing in these Rules indicate that Defendant is entitled to receive documents or other evidence from which the government derives the bad act evidence.

It is clear that under both the Federal Rules of Evidence and the Local Rules of this Court, notice is not only a condition precedent to admissibility but also requires more than a mere commingling of extrinsic offense evidence reports in the government's general discovery offering. Such would not provide Defendant with notice since Defendant would have to determine at his peril which of the government's offering constituted "extrinsic"

4

offense evidence. Such a procedure would also not apprise Defendant of the purpose for which said evidence was admissible under Rule 404(b). The Rule allows such evidence for various purposes, including, but not limited to, "proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." Fed. R. Evid. 404(b).

For cause shown, the government may supplement the disclosures required by Loc. Crim. R. 16.2. The notice, in whatever form the government chooses to use, must outline in general form the evidence to be offered and a memorandum of law stating the purpose(s) for which the evidence will be offered and case law supporting the government's position. This procedure will allow Defendant an opportunity to respond with his own legal argument regarding admissibility prior to trial, thereby avoiding needless delay during trial. Further, at trial, if the government wishes to present such evidence, counsel must approach the bench prior to introducing such evidence in order that defense counsel may have an opportunity to object to the admissibility of such evidence, and if such evidence is to be admitted over objection, to request appropriate limiting instructions.

## MOTION TO STRIKE ALL REFERENCES OF SOUTH CAROLINA FROM SUPERSEDING INDICTMENT AS SURPLUSAGE

Defendant Ellicott seeks to strike all references to South Carolina from the Superseding Indictment as inflammatory, irrelevant, and immaterial because "none of the individual counts of the Indictment relate to any podiatric care rendered to a patient in South Carolina." (Doc. no. 32). According to Defendant Ellicott, he will be prejudiced at trial by these references to South Carolina. Defendant relies upon Fed. R. Crim. P. 7(d) which states,

"Upon the defendant's motion, the court may strike surplusage from the indictment or information." The purpose of a motion to strike under Rule 7(d) is to protect a defendant against "prejudicial or inflammatory allegations that are neither relevant nor material to the charges." United States v. Terrigno, 838 F.2d 371, 373 (9th Cir. 1988) (quoting United States v. Ramirez, 710 F.2d 535, 544-45 (9th Cir. 1983)). Courts in various circuits have consistently held that if evidence of an allegation is admissible and relevant, that it will not be stricken regardless of the prejudicial effect. See, e.g., United States v. Ianniello, 621 F. Supp. 1455, 1479 (S.D.N.Y. 1986), overruled on other grounds, United States v. Indelicato, 865 F.2d 1370, 1382 (2d Cir. 1989); United States v. Climatemp, Inc., 482 F. Supp. 376, 391 (N.D. Ill. 1979), aff'd, 705 F.2d 461 (7th Cir. 1983).

Such a motion to strike is left to the discretion of the Court, and often judgment on the motion will be reserved until after presentation of the evidence at trial. 1 Wright & Miller, Federal Practice and Procedure: Criminal 3d § 127. This practice of reserving ruling on a motion to strike surplusage until the presentation of evidence at trial has been approved by the Eleventh Circuit Court of Appeals and routinely followed by district courts. For example, in United States v. Awan, 966 F.2d 1415, 1426 (11th Cir. 1992), the Court of Appeals ruled that a motion to strike surplusage should not be granted "unless it is clear that the allegations are not relevant to the charge and are inflammatory and prejudicial. . . . [T]his is a most 'exacting standard.'" Because of the exacting standard that is to be applied, "it is proper to reserve ruling on a motion to strike surplusage until the trial court has heard evidence that will establish the relevance of the allegedly surplus language, as indeed the district court did in this case." Id. (citation omitted); see also United States v. Hawkins, 781

F.2d 1483, 1484 (11th Cir. 1986) (affirming trial court's decision to strike surplusage at point that defendant moved for judgment of acquittal after trial).[1]

Here, although Defendant contends that references to South Carolina are inflammatory, irrelevant and immaterial because no specific count of the Superseding Indictment relates to care rendered in South Carolina, the government counters that Count One includes allegation of fraud relating to services allegedly performed on South Carolina Medicaid recipients. Under these circumstances and at this pre-trial stage, the Court cannot conclude that Defendant Ellicott has met the "exacting standard" necessary for granting a motion to strike surplusage. Such a motion is properly left for consideration by the Honorable Dudley H. Bowen, Jr., United States District Judge, at trial. Accordingly, the motion to strike surplusage is DENIED without prejudice to re-urging it at trial.

## MOTION FOR BILL OF PARTICULARS

In this case, Defendant Ellicott is charged in 181 counts with health care fraud, making false statements related to health care matters, and mail fraud. The current prosecution is by way of a Superceding Indictment filed on January 6, 2005. On November 16, 2004, Defendant Ellicott filed a Motion for Bill of Particulars, (doc. no. 31), seeking particulars concerning "The Scheme to Defraud" including the allegation Defendant billed for debridements without the required medical file documentation to make such services

---

[1] District Courts have routinely followed this practice, as evidenced by the recent decision in United States v. Al-Arian, 308 F. Supp.2d 1322, 1357 (M.D. Fla. 2004) in which the trial court reserved ruling on the motion to strike phrases indicating animus towards the United States in a terrorism trial until it could determine the language's relevance at trial. See also United States v. McVeigh, 940 F. Supp. 1571, 1584 (D. Colo. 1996) (reserving ruling on "premature" motion to strike until trial).

reimbursable under the Medicare and Medicaid regulations and the over $400,000 alleged loss amount.

The Court notes at the outset that the Superceding Indictment omits any reference to an alleged loss of $400,000 and Defendant's arguments based on Apprendi and Blakely are MOOT. Furthermore, the Superceding Indictment alleges the remaining charges with more than adequate particularity. The Superceding Indictment explains that Medicare pays for the debridement[2] of mycotic[3] toenails when: 1) there is clinical evidence in the medical record that the nail is mycotic , and 2) the patient's ability to walk or overall medical condition will be significantly affected if debridement is not performed. (Doc. no. 46, p. 2-3). "Current Procedural Terminology"[4] codes 11700 and 11720 refer to the treatment of 1-5 toes. Codes 11701 and 11721 refer to the treatment of 6-10 toes. (Id. at 2). These codes are only to be used when the nails are actually debrided, rather than when they are only trimmed. (Id. at 3).

On the other hand, Medicare does not cover procedures under 11719, which refers to the simple trimming of mycotic nails and is considered "routine foot care." (Id. at 3). Medicare will cover the cost of trimming toenails (mycotic or not) only if the patient has a

---

[2] "Debridement" refers to the excision of dead tissue, i.e. removing part of nail, but leaving some intact.

[3] "Mycosis" refers to any condition caused by fungus.

[4] "Current Procedural Terminology," or CPT, is a medical code set of physician and other services, maintained and copyrighted by the American Medical Association, and adopted by the US Department of Health and Human Services as the standard for reporting physician and other services on standard transactions. CPT is applied universally by medical care providers. Each and every medical service delivered is represented by a unique five-digit code.

"systemic disease" such that: 1) the patient was under the active care of "a medical doctor (not a podriatrist)" for the disease, and 2) the systemic disease made routine foot care by a non-professional "hazardous." (Id.).

As the Superceding Indictment explains, Medicaid handles the debridement/trimming issue similarly. (Id.). Defendat Ellicott allegedly fraudulently billed Medicare and Medicaid for debridement of toenails when he: 1) billed for procedures under 11701 and 11721 (6-10 toes, both feet) when the patients were actually dead (Id. at 4); 2) billed under 11701 or 11721 (which refer to 6-10 toes, or *both feet*) when the patients were amputees--*i.e.* did not have two feet--and thus could not have received treatment on more than five toes (Id.); and 3) billed under 11701 and 11721 when the patients only received trimming, not debridement (Id. at 4-5). Defendant Ellicott is alleged to have defrauded Medicare/Medicaid by billing under 11701/11721 when the patients had no documented need for reimbursable debridement. (Id. at 5). The Superceding Indictment could be more specific as to each alleged instance of fraud, but does allege: 1) the initials of each relevant patient, 2) the date upon which the fraudulent claim was made, 3) the procedure code actually used, and 4) the reason each transaction was fraudulent (*i.e.* dead patient, one foot, just a trim).

Rule 7(f) of the Federal Rules of Criminal Procedure provides that Defendant may seek from the Court a bill of particulars setting forth the time, place, manner, and means of commission of the crime alleged in the indictment. The purpose of the bill of particulars is to give notice of the offenses charged in the indictment that Defendant may prepare a defense, avoid surprise, or raise pleas of double jeopardy when the indictment itself is too vague for such purposes. United States v. Anderson, 799 F.2d 1438, 1441 (11th Cir. 1986)

(quoting United States v. Cole, 755 F.2d 748, 760 (11th Cir. 1985)). Where necessary, the bill of particulars supplements the indictment by providing the accused with information necessary for trial preparation. Id. Generalized discovery is not a proper purpose in seeking a bill of particulars. United States v. Colson, 662 F.2d 1389, 1391 (11th Cir. 1981). Nor is it a device intended to secure for the defense the government's explanation of its theory of the case. United States v. Hajecate, 683 F.2d 894 (5th Cir. 1982). It cannot be employed to discover the identity of unindicted co-conspirators. Colson, 662 F.2d at 1391.

The determination of whether a bill of particulars should be ordered may only be decided in light of the particular circumstances of each case. United States v. Davis, 582 F.2d 947, 951 (5th Cir. 1987). The question is committed to the sound discretion of the trial court whose decision will be reversed only where denial of the motion results in surprise to Defendant at trial resulting in prejudice to his substantial rights. United States v. Hawkins, 661 F.2d 436, 451-52 (5th Cir. Unit B Nov. 1981). In this case, the government has granted liberal discovery consisting of nearly 20,000 pages which includes accelerated Jencks Act disclosures and police reports from state, local and federal agencies. It is also noted that the Superceding Indictment in the case is specific and supports each of the requisite elements of the charged offenses. Under these circumstances, information essential to the defense is being provided and the need for particulars is nonexistent. In any event, since discovery material is being made available, a ruling on a bill of particulars would appear to be premature and unnecessary. Discovery should cure any need for additional information to adequately defend the charges. Therefore, Defendant's motion is DENIED.

10

SO ORDERED this 22th day of May, 2005, at Augusta, Georgia.

W. LEON BARFIELD
UNITED STATES MAGISTRATE JUDGE

# United States District Court
## *Southern District of Georgia*

UNITED STATES OF AMERICA     *

         vs.               *      CASE NO. CR104-60

RUSSELL J. ELLICOTT       *

                               *

                               *

The undersigned, a regularly appointed and qualified deputy in the office of this Clerk of this District, while conducting the business of the Court for said Division does hereby certify the following:

1.     Pursuant to instructions from the court, and in the performance of my official duties, I personally placed in the U.S. Mail a sealed envelope bearing the lawful frank of the Court, and properly addressed to each of the persons, parties or attorneys listed below;
and

2.     That the aforementioned envelope(s) contain a copy of the documents known as Order _____ dated 5/27/05 _____, which is part of the official records of this case.

Date of Mailing:    5/27/05 _____

Date of Certificate:   5/27/05 _____

 

SCOTT L. POFF, CLERK

By :    _L. Teacher_ (signature)

NAME:

1.  Russell J. Ellicott _____

2.  Richard E. Allen _____

3.  Eric C. White _____

4.  _____

5.  _____

6.  _____

7.  _____

Cert/Copy

| | | |
|---|---|---|
| ☐ ☐ | District Judge |
| ☐ ☒ | Magistrate Judge |
| ☐ ☐ | Minutes |
| ☐ ☐ | U.S. Probation |
| ☐ ☐ | U.S. Marshal |
| ☐ ☒ | U.S. Attorney |
| ☐ ☐ | JAG Office |

Cert/Copy

| | | |
|---|---|---|
| ☐ ☐ | Dept. of Justice |
| ☐ ☐ | Dept. of Public Safety |
| ☐ ☐ | Voter Registrar |
| ☐ ☐ | U.S. Court of Appeals |
| ☐ ☐ | Nicole/Debbie |
| ☐ ☐ | Ray Stalvey |
| ☐ ☐ | Cindy Reynolds |